**HARRIS COUNTY BAIL BOND BOARD, Petitioner,**

v.

**Edd BLACKWOOD and Allegheny Mutual Casualty Company, Respondents.**

No. 99–1159.

Supreme Court of Texas.

Argued on Oct. 18, 2000.

Decided March 1, 2001.

Rehearing Overruled April 26, 2001.

Michael P. Fleming, Sandra D. Hachem, Cedric K. Loeb, Houston, for Petitioner.

Roger Moore, Austin, for Respondent.

Justice HANKINSON delivered the opinion of the Court.

In this case we are called upon to interpret certain provisions of the Bail Bond Act relating to the licensing of bail bondsmen. TEX.REV.CIV.STAT.ANN. art. 2372p–3 (1995) (current version at TEX.OCC.CODE §§ 1704.001–.306).[1] The issues presented are whether the court of appeals erred in affirming the trial court's judgment renewing the license of respondent Allegheny Mutual Casualty Company when: (1) the license application before the court did not include three statutorily required recommendation letters; and (2) the trial court ordered the license renewed for two years from the date of its judgment rather than two years from the date Allegheny's previous license expired. We hold that the Bail Bond Act's application requirements are mandatory and that the Act provides a district court with the authority to act on a license renewal application only for the two-year period beginning on the date an applicant's previous license expired. Accordingly, we reverse the court of appeals' judgment and render judgment for petitioner Harris County Bail Bond Board.

The Bail Bond Act governs the business of writing bail bonds. The Legislature has declared the business of writing bail bonds to be a business affecting the public interest. *Id.* § 1. Accordingly, the Legislature has provided for the creation of bail-bond boards to administer the Act. A county bail-bond board is responsible for all aspects of the licensing of bondsmen in that county, including granting, denying, or renewing licenses. *Id.* §§ 6, 8.

A bail-bond license may be granted to either a corporation or an individual. *Id.* §§ 2, 6(a). A corporation must obtain a separate license for each agent it authorizes to issue bonds. *Id.* § 7(c). An individual or corporation desiring to write bonds must file a sworn application with the bail-bond board, which must include certain information designed to help the

---

1. We cite the Bail Bond Act as it existed at the time of the trial court's decision. All section numbers refer to the Bail Bond Act as it appeared in 1995.

board evaluate the applicant's character and financial standing. *Id.* § 6(a), (b). For example, each application must contain a sworn financial statement, a declaration of intent to abide by the laws governing bail bondsmen, and three letters of recommendation. *Id.* § 6(a)(6–7), (b). The recommendation letters must be filed on behalf of the applicant, or, in the case of a corporation, the individual in charge of the business, and must attest to that person's reputation of honesty, truthfulness, fair dealing, and competency and recommend that the license be granted. *Id.* § 6(b). Once the Board tentatively approves the application, the applicant must put up security in the form of cash, property, or, in the case of a corporation, an irrevocable letter of credit. *Id.* § 6(f).

The Act requires a bondsman to renew his license every two years. *Id.* § 8(a). The requirements for a renewal application are the same as the requirements for an original license application. *Id.* A license may be renewed for twenty-four months from the date the previous license expires, but only if the renewal application is filed thirty days before the expiration of the previous license. *Id.* A board may grant the renewal if the applicant's current license has not been revoked, if the application complies with the requirements, and if the board knows of no legal reason why the application should not be renewed. *Id.* If a board revokes, suspends, or refuses to issue or renew a license, the applicant may appeal to the district court in the county in which the license is issued or refused for a trial de novo, "as in proceedings appealed from justice to county courts." *Id.* § 11. The Board's decision has full force and effect pending the determination of the appeal. *Id.*

Allegheny is an insurance company authorized to do business in Texas. One facet of Allegheny's business is writing bail bonds. Allegheny holds bail-bond licenses for several agents in Harris County. Respondent Edd Blackwood became an agent for Allegheny in 1989. As an agent for Allegheny, Blackwood is not personally liable for the bonds he writes. Rather, Allegheny, the corporate surety, is responsible for any bond forfeitures that might arise in connection with bonds written on that license. *See id.* § 6(f)(3). Before Blackwood joined Allegheny, he held an individual, or property bondsman's license. As a property bondsman, Blackwood was personally liable for bond forfeitures as they became due and was required to put up his own property to secure the bonds he wrote. *See id.* § 6(g), (h).

In 1989, Allegheny applied for and was granted a two-year bail-bond license with Blackwood as its agent. The Board renewed the license in 1991 and again in 1993 after Allegheny properly filed applications for renewal before the previous license periods ended. However, when the license came up for renewal in August of 1995, the Board refused to renew it for a full two-year term because Blackwood had not paid the county for several forfeitures on bonds written under his individual property license, and instead renewed it for only three months. When the three-month license expired in November of 1995 and the forfeitures remained unpaid, the Board refused to issue further renewals.

Allegheny and Blackwood appealed the Board's order to the district court. During the pendency of the case in the trial court, Allegheny continued to write bonds in Harris County with Blackwood as its agent pursuant to a temporary restraining order and an agreed temporary injunction. After conducting a trial de novo, as prescribed by section 11 of the Act, the trial court found no legal reason that the license should not be renewed and accord-

ingly ordered the license renewed for a two-year period beginning on August 20, 1997, the date of its judgment.[2] The Board moved to modify the judgment or for new trial, complaining for the first time that because the application in the record did not contain any recommendation letters for Blackwood, there was no evidence to support the trial court's judgment. The trial court denied the motion.

The Board appealed, arguing that the existence of the judgments against Blackwood provided sufficient reason to deny the license and that the trial court erred in ordering renewal because Blackwood did not present a complete application to the court. The Board also challenged several of the trial court's findings of fact and conclusions of law. The court of appeals affirmed the trial court's judgment. It concluded, among other things, that the Board waived its right to complain about the incomplete application or that the evidence showed that Blackwood's application to the Board was complete, and that the trial court did not err in ordering renewal of the license for two years from the date of its judgment. 2 S.W.3d 31, 35–36. The Board now petitions for review.

█ The Board first complains that the court of appeals erred in affirming the trial court's renewal of the license when the application before the court did not meet the statutory requirement that it contain three letters of recommendation. Allegheny counters that the Board waived the issue by failing to raise it before the trial ended. Alternatively, Allegheny contends that the trial court had discretion to order the renewal even though the letters were not present.

The court of appeals' rationale for affirming the trial court's judgment on this issue is not entirely clear. Either the court of appeals believed that the trial court could order Allegheny's license renewed on evidence that it submitted a complete application to the Board, even though the evidence in court did not meet the statutory requirements, or the court of appeals concluded that the Board waived the issue by failing to raise it until it filed a motion to modify the judgment or for new trial. 2 S.W.3d at 35–36. Regardless of the basis for the decision, we agree with the Board that the court of appeals erred in concluding the license could be renewed when the application before the trial court was incomplete.

Section 8(a) of the Act states that a renewal application "shall have the same form and content" as an original application. Tex.Rev.Civ.Stat.Ann. art. 2372p–3, § 8(a). And section 6(b) provides that each application shall include three letters of recommendation attesting to the honesty, truthfulness, fair dealing, and competency of the applicant. *Id.* § 6(b). "If the applicant is a corporation, the letters shall be required for the person to be in charge of its business in the county." *Id.* Section 9(a) of the Bail Bond Act then concludes that "[n]o license may be issued to any person who has not complied with the requirements of this Act ." *Id.* § 9(a). The Act therefore makes all application requirements mandatory. *See* Tex.Gov't Code § 311.016.

---

**2.** The court-ordered license expired in August of 1999, raising the possibility that this case might be moot. However, we have long held that the expiration of a license will not moot the controversy if the appeal arises from the renewal or refusal to renew a license under a statutory scheme that contemplates a continuous cycle of license renewals. *E.g., House of Tobacco, Inc. v. Calvert,* 394 S.W.2d 654 (Tex. 1965); *Department of Pub. Safety v. Austin,* 163 Tex. 280, 354 S.W.2d 376 (1962); *Isbell v. Brown,* 196 S.W.2d 691 (Tex.Civ.App.—San Antonio 1946, writ ref'd).

■ The November 1995 application in the record does not contain any recommendation letters for Blackwood. When the Board raised this deficiency in its post-judgment motion, Allegheny responded that it had provided the Board with three letters from three local judges, referring the court to a copy of Allegheny's May 1995 application admitted into evidence as Plaintiff's Exhibit 4. Because there was no evidence that these recommendations had changed since May, Allegheny argued that the letters from that earlier application fully supported the court's judgment. In fact, Plaintiff's Exhibit 4 contained only one of the three letters referred to in Allegheny's response. Allegheny did not ask the trial court for permission to reopen the evidence to supplement the record, either because it did not notice the letters were missing or did not consider any additional evidence to be necessary. Even if Allegheny submitted a complete application to the Board, as Blackwood testified it did, in a de novo proceeding it was necessary that the letters required by the statute be before the trial court, which was required to pass on Allegheny's application without regard to the Board's decision.

■ Although the Board apparently also did not notice that the letters of recommendation were missing until after the court rendered judgment, it did not waive the complaint by failing to raise the issue earlier. Without these letters, there was no evidence from "three reputable persons" who had known Blackwood "for a period of at least three years" vouching for his "reputation for of honesty, truthfulness, fair dealing, and competency" and recommending "that the license be granted." *See* Tex.Rev.Civ.Stat.Ann. art. 2372p–3, § 6(b). The Board's post-judgment motion arguing that the evidence was legally insufficient to support renewal of the license adequately preserved the error

because a no-evidence challenge may be raised for the first time in a post-judgment motion. *See Cecil v. Smith*, 804 S.W.2d 509, 510 (Tex.1991); Powers & Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 530 (1991).

■ The Board further complains that the trial court erred in ordering the license renewed for two years from the date of judgment. The Board argues that the Act does not give the trial court discretion to order renewal for any period other than the period originally contemplated by the Board, in this case from November 1995 to November 1997. The Board claims that any other interpretation subverts the statutory scheme because it avoids the checks the Legislature placed on bail-bond companies to further the public interest. Allegheny responds that the Board's interpretation of the statute cannot be correct because denying the trial court this discretion makes the right to appeal meaningless. It argues that the two-year period will almost always reach its end by the time the trial court hears the case. Because there is some question about what time period a court's judgment regarding a renewal license pertains to (i.e., the two years from the date of the judgment or the two years from the date the previous license expired), we must consider this issue even though we have determined that Allegheny was not entitled to a license. We reject Allegheny's argument, and hold that the Bail Bond Act provides a district court with the authority to act on a license renewal application only for the renewal period considered by the Board when the application was made.

The Bail Bond Act contemplates a continuous cycle of renewals. Section 8(a) of the Act provides that a license may be renewed only if the renewal application is filed thirty days before the expiration of

the previous license. TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 8(a). The Act further provides that a board may renew a license for "a period of 24 months from the date of expiration" of the previous license. *Id.* Under section 11, appeals are then taken from a "board's order revoking, suspending, or refusing to issue a license." *Id.* § 11. Because the Board's order has placed at issue a two-year license period that begins on the date the previous license expired, a district court conducting a section 11 trial de novo must decide in turn whether to grant renewal for the same two-year period.

This renewal cycle is central to the policy declared by the Legislature in the Bail Bond Act: that it is a business affecting the public interest and that the policy of this state is to "provide reasonable regulation to the end that the right of bail be preserved and implemented by just and practical procedures governing the giving or making of bail bond and other security to guarantee appearance of the accused." *Id.* § 1. Because the Legislature was concerned with bondsmen's financial security and integrity, it designed a system in which information relevant to those issues would be regularly updated through the process of applying for renewals. A renewal application must meet the same requirements that an original license application must meet. *Id.* § 8(a). This requirement insures that a bondsman's financial standing and reputation are thoroughly reviewed every two years, *id.* § 6(a), (b), and that the decision to grant or refuse a license will be based on current information and assurances. The renewal application before the Board in this case was for a license to run from November 1995 to November 1997, and the trial court's de novo review arose from the Board's decision on that application and the updated information and assurances it contained. Therefore,

the trial court had no authority to renew the license for any period other than the two-year period between November 1995 and November 1997.

We are not persuaded by Allegheny's argument that no meaningful relief can be provided to a bondsman if the trial court cannot order renewal from the date of judgment. Nothing in the record in this case indicates that either party made any effort to expedite the proceedings in the trial court. In any case, Allegheny was not prejudiced by the delay because it was writing bonds during the pendency of the trial pursuant to the agreed temporary injunction, and whether or not the renewal period ended before the court decided the case, Allegheny was obligated to file another renewal application with the Board. The court of appeals therefore erred in affirming the trial court's judgment granting a license for a two-year period that began on the date of judgment.

For these reasons, we conclude that the court of appeals erred in ordering the renewal of the license in the absence of the statutorily required letters of recommendation and in affirming the trial court's judgment ordering that the license be renewed for a two-year period from the date of judgment. Accordingly, for the reasons discussed above, we reverse the court of appeals' judgment and render judgment for the Bail Bond Board.