# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00710-CV

**Tonya Denise Linder d/b/a Texas Bail Bond, Appellant**

**v.**

**Bell County Bail Bond Board, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT NO. 212,939-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Tonya Denise Linder d/b/a Texas Bail Bond (Linder) appeals from the trial court's denial of her application for a temporary injunction in connection with her appeal of the Bell County Bail Bond Board's refusal to renew her bail bond license. *See generally* Tex. Occ. Code Ann. §§ 1704.001-.306 (West 2004 & Supp. 2006) (regulation of bail bond sureties) (hereafter, Code § ___; citations to 2004 volume unless otherwise indicated[1]). Because we hold that the trial court did not abuse its discretion in denying the temporary injunction, we affirm the trial court's judgment.

## Background

Bell County, through the Bell County Bail Bond Board (the Board), issued a license to Linder to operate as a bail bondsperson in Bell County. Her license expired on August 29, 2005.

---

[1] This short citation form applies to text and footnotes.

Linder submitted a renewal application in July 2005. The Board has a published booklet of rules and regulations setting out the requirements for an initial or renewal application. These requirements track the requirements as set out in the occupations code.

One requirement for an application is that it contain a sworn financial statement. The Board, however, found Linder's July financial statement to have several problems.[2] The Board, rather than immediately denying Linder's application, advised her that she needed to correct the deficiencies in the application by the next Board meeting and that she should consider getting professional advice to help her complete the application properly. The Board allowed Linder to continue to operate as a bail bondsperson until the next meeting, even though her license technically expired before the meeting to be held on September 15, 2005.

Although the Board required the submission of an application five days in advance of the meeting at which the application was to be considered, Linder submitted her revised application at noon on the day of the meeting. The Board found a number of errors and deficiencies in the new filing and denied the application. Linder then filed a suit for judicial review in district court and an application for temporary injunction. After the trial court denied the temporary injunction, Linder brought this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (a)(4) (West Supp. 2006).

---

[2] For example, Linder's numbers in the asset column did not equal the number she listed as total assets. One item in the assets column carried over from a schedule on another page was not the same number as listed on that schedule. The numbers for assets, liabilities, and net worth were listed on the wrong lines, creating some confusion.

Linder's statement of her single issue consists mostly of argument as to why the Board erred in denying her license renewal. She concluded with the question whether the trial court clearly abused its discretion in failing to grant Linder's request for a preliminary injunction. Our answer is no.

**Discussion**

*Review of a Temporary Injunction*

In an appeal from an order granting or denying a request for a temporary injunction, our review is confined to the validity of the order that grants or denies the injunctive relief. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 564 (Tex. App.—Austin 2001, no pet.); *Center for Econ. Justice v. American Ins. Ass'n*, 39 S.W.3d 337, 343-44 (Tex. App.—Austin 2001, no pet.). The decision to grant or deny the injunction is within the sound discretion of the trial court, and we will not reverse that decision absent a clear abuse of discretion. *Walling v. Metcalf*, 863 S.W.2d 56, 57 (Tex. 1993); *Synergy*, 63 S.W.3d at 561. A trial court abuses its discretion when it acts arbitrarily and unreasonably, without reference to guiding rules or principles, or when it misapplies the law to the established facts of the case. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

In deciding whether the trial court has abused its discretion in denying or granting a temporary injunction, the reviewing court may neither substitute its judgment for that of the trial court nor consider the merits of the underlying lawsuit. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Synergy*, 63 S.W.3d at 564. The appellate court must review the evidence in the light most favorable to the order and must indulge all reasonable inferences in favor of the decision.

3

*Center for Econ. Justice*, 39 S.W.3d at 344; *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.).

In the absence of specific findings of fact and conclusions of law, the trial court's order must be upheld on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862; *Universal Health Servs.*, 24 S.W.3d at 577. The reviewing court "cannot reverse a trial court's order if the trial court was presented with conflicting evidence and the record includes evidence that reasonably supports the trial court's decision." *Universal Health Servs.*, 24 S.W.3d at 576 (citing *CRC-Evans Pipeline Int'l, Inc. v. Myers*, 927 S.W.2d 259, 262 (Tex. App.—Houston [1st Dist.] 1996, no writ)); *see Goldome Credit Corp. v. University Square Apts.*, 828 S.W.2d 505, 508 (Tex. App.—Amarillo 1992, no writ).

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling*, 863 S.W.2d at 57. A temporary injunction is an extraordinary remedy and does not issue as a matter of right. To obtain a temporary injunction, the applicant must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru*, 84 S.W.3d at 204; *Walling*, 863 S.W.2d at 57. An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204. The party seeking the injunction bears the burden of proving all of these elements. *Bridas Corp. v. Unocal Corp.*, 16 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2000, pet dism'd w.o.j.).

*Preliminary Complaints*

We begin with Linder's complaint that the trial court failed to file findings of fact and conclusions of law even though properly requested. An appeal from a temporary injunction is an interlocutory appeal. Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (authorizing various categories of interlocutory appeals). As an interlocutory appeal, it is accelerated. Tex. R. App. P. 28.1. With regard to findings and conclusions, Rule 28.1 says: "The trial court need not, but may—within 30 days after the order is signed—file findings of fact and conclusions of law." *Id*. Accordingly, the trial court was not obligated to file such findings. *See id*.; *see also C.S.C.S., Inc. v. Carter*, 129 S.W.3d 584, 593-94 (Tex. App.—Dallas 2003, no pet.). Findings of fact and conclusions of law filed in conjunction with an order on interlocutory appeal may be helpful in determining if the trial court exercised its discretion in a reasonable and principled fashion. *Tom James of Dallas, Inc. v. Cobb*, 109 S.W.3d 877, 884 (Tex. App.—Dallas 2003, no pet.) (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992)). However, they do not carry the same weight on appeal as findings made under rule 296 and are not binding when analyzing whether a trial court abused its discretion. *Id*. Given that the trial court was not required to make findings of fact and conclusions of law, we cannot find an abuse of discretion in its failure to do so.

Linder also complains that the Board was required to make a record and transcribe the renewal proceeding. *See* Code § 1704.102(a)(4). Section 1704.102 deals with the Board's enforcement authority, its ability to conduct investigations, and to suspend or revoke a license for a violation of the chapter. This section requires a record of board proceedings. Another section of the code deals with license suspension and revocation proceedings. *Id*. § 1704.254. It requires

5

notice of a hearing to suspend or revoke a license. That notice must state each alleged violation and include a copy of any written complaint on which the hearing will be based. *Id*. § (a)(2), (3). The hearing is limited to each alleged violation stated in the notice. *Id.* § (a)(3). The hearing must be recorded and a license holder may obtain a copy of the record on request and upon payment of the reasonable costs of transcription. *Id.* § (d).

On their face, the sections concerning the recording of a hearing apply only to suspension or revocation proceedings, not to license applications or renewals. Sometimes the same sections govern both enforcement and licensing, at other times they do not. The bail bond act has been referred to as a "somewhat poorly constructed statute." *Burns v. Harris County Bail Bond Bd.*, 971 S.W.2d 102, 105 (Tex. App.—Houston [14th Dist.] 1998, no pet.). However, we do not discern an abuse of discretion in the trial court applying the plain language of the statute.

Further, review by the trial court is de novo "in the same manner as an appeal from a justice court to a county court." Code § 1704.256. Trial de novo is a new and independent action. *See GATX Terminal Corp. v. Rylander*, 78 S.W.3d 630, 634 (Tex. App.—Austin 2002, no pet.) (citing *Key Western Life Ins. Co. v. State Bd. of Ins.*, 350 S.W.2d 839, 846 (Tex. 1961)). In a recent case, the Texas Supreme Court applied the de novo standard of review to a bail bond licensing proceeding. *Harris County Bail Bond Bd. v. Blackwood*, 41 S.W.3d 123, 127 (Tex. 2001). In *Blackwood*, the Bail Bond Board complained on appeal that the application before the trial court did not contain the required three letters of recommendation and so the trial court should have denied the application. *Id*. at 126. Apparently, the court of appeals either considered the Board's contention waived or considered that the application had been complete at the Board level. *Id*. The supreme

court noted that even if the applicant had submitted a complete application to the Board, "in a de novo proceeding it was necessary that the letters required by the statute be before the trial court, which was required to pass on Allegheny's application *without regard to the Board's decision*." *Id*. at 127 (emphasis added). Accordingly, even if the proceedings had been recorded, the trial court would not have been bound by the Board proceeding.[3]

Therefore, neither of the above contentions would provide an independent basis to hold that the trial court abused its discretion in denying the temporary injunction nor contribute to Linder's ability to demonstrate a probable right to the relief sought, that is, the adequacy of her application to secure a license renewal. Because Linder at times appears to argue that her July and September application should be considered together, and because both were in front of the trial court, we will discuss both.

### Probable Right to Relief

In evaluating whether the trial court abused its discretion, we do not consider the merits of the case but are confined to evaluating whether the applicant demonstrated a probable right

---

[3] The sections on appeals are a good example of the confusing nature of the bail bond act. *See* Code § 1704.255, .256. The standard of review for appeals filed under section 1704.255 is trial de novo in the same manner as an appeal from a justice court to a county court. Section 1704.255 refers to appeals from orders denying an application or renewal, or revoking or suspending a license. However, in the case of revocation or suspension, appeal is limited to those items raised in the notice sent to the applicant, which would seem to modify the trial de novo concept. *See Harris County Bail Bond Bd. v. Blackwood*, 41 S.W.3d 123, 127 (Tex. 2001) (trial court passes on application without regard to Board's decision). Of course, there is a logical difference between an application proceeding, in which the requirements are specified in the statute and the applicant knows them, and a suspension or revocation proceeding, in which a license holder would have no way of knowing his or her license was in jeopardy without some form of notice from the Board.

to the relief sought. *See Davis*, 571 S.W.2d at 862. The bail bond act makes all application requirements mandatory. *See Blackwood*, 41 S.W.3d at 127. Linder's application for renewal presented several problems that could have caused the trial court to conclude that Linder's likelihood of success on the merits of the issue whether her license should be renewed was slight.

As previously noted, Linder's financial statement tendered with the July application did not balance. In September, she submitted a new financial statement along with a new application. The new financial statement created new questions, however. The July financial statement showed she had total assets of approximately $740,000, with $5,200 cash in hand. Her September financial statement showed that she suddenly had $1,111,343 in total assets with $174,840 cash in hand. However, Linder provided no explanation at trial for the discrepancy and admitted that a reasonable person would have questions about the accuracy of the statement. She also acknowledged that the information about her cash on hand was inaccurate and inconsistent with information Bell County had about those assets.

Linder also failed to provide required information in her application. An applicant for a bail bond license must provide certain information about the non-exempt property the applicant intends to execute in trust to the Board to secure her bonds. Code §§ 1704.154 (b)(2)(E), b(3); 1704.155. The applicant must give a legal description of the property and provide current tax statements for each property showing that there are no tax liens on the property as well as providing the current value of the property. *Id*. § 1704.155(1)-(3). The July application indicated that Linder was pledging property, but included no description, address, or appraisal information. Instead, a series of pages labeled "Exhibit C," "renewal, at this time copies of deeds already on file with Bell

8

County Bail Bond Board" were attached to the application. Nowhere in the application, however, were these pieces of property listed and identified. In the September application, Linder provided addresses for two properties she was pledging but provided the other required information for only one of these properties.

The applicant is also required to disclose any unpaid final judgments against her as a surety on a bond as of the time of the application. *Id*. § 1704.154 (b)(4)(G)(ii). In her July application, Linder indicated she had none. However, at that time, she had a number of final judgments against her which were paid after submitting her application. In September, she again said that she had no outstanding judgments, but Bell County records appeared to show at least one outstanding judgment.[4]

Linder's application also suffered from other problems. Linder's September application was not submitted to the Board until noon on the day of the meeting scheduled for 2:00 in the afternoon. Although the Board's brief refers to the need for the application to be submitted five days in advance of the meeting, the statute actually requires the application to be submitted thirty days before expiration. The Board Secretary is then supposed to review the application and forward it to the Board at least five days in advance of the meeting. In any event, submission by the applicant on the day of the meeting is too late. Another problem with the September application is that it was self-notarized. Linder had the July application properly notarized, and some attachments

---

[4] Linder disputed whether these judgments were actually "final" and had to be reported. Again, we do not resolve the merits of the argument, but are discussing this factor only with regard to the likelihood of her right to relief. The more questionable the application, the less likely that Linder would have been able to prevail on the merits.

to the September application were notarized, but Linder notarized her own signature on the application. Linder's application presented sufficient problems on its face that the trial court had evidence from which it could conclude that her prospects of renewing her license were remote. We now address the irreparable harm aspect of the temporary injunction.[5]

*Harm*

Linder contends that a temporary injunction was necessary to allow her to continue her business of writing bonds. However, at trial, Linder testified that because of issues not related to this application, she was unable to write bail bonds on "No. 62," apparently one license that she held.[6] She also said that for the last few days before trial, she was above her limit for writing bonds on "No. 47." The trial court may have concluded that the harm to Linder's financial status came as much from other issues as from the denial of her license, and a temporary injunction to allow her to continue to write bonds would not remediate the harm. We overrule Linder's sole issue presented.

## Conclusion

With no findings of fact and conclusions of law, we uphold the order on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862. We have reviewed the record in the light

---

[5] Linder also argues that changes in the Board itself caused problems with her license renewal. Apparently, there were several new members on the Board. Further, the long-time secretary of the Board had suffered incapacitating health problems that resulted in the need for a new secretary. Linder seems to complain that she did not receive the level of assistance with her application that she was used to receiving and also seems to complain that the newer Board members were more stringent than previous members about following the rules. She does not, however, raise any issues that rise to the level of a due process violation.

[6] She offered no further explanation.

most favorable to the order. The record contains evidence that reasonably supports the trial court's decision to deny the temporary injunction based on the numerous problems with her renewal application. Accordingly, we hold that the trial court did not abuse its discretion in denying the temporary injunction and affirm its order.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed:  February 8, 2007

11