Elizabeth Boyer et al.                    :

v.                    :

Chief Judge Haiganush Bedrosian et al.        :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Elizabeth Boyer et al.         :

v.                      :

Chief Judge Haiganush Bedrosian[1] et al.   :

Present: Suttell, C.J., Flaherty, Robinson, and Indeglia, JJ.

# O P I N I O N

**Justice Flaherty, for the Court.** The plaintiffs include fifteen minor children and their parents[2] who participated in the Family Court's Truancy Court Diversion Calendar Program. The Diversion Program, established in 1999, allows Family Court magistrates to conduct court sessions at public schools where truancy has become an issue. The stated goal of the Diversion

---

[1] At the time plaintiffs filed the initial complaint, Jeremiah S. Jeremiah was the Chief Judge of the Family Court. After Chief Judge Jeremiah retired, plaintiffs amended the complaint to substitute the then-acting and now presiding chief judge of the Family Court, Chief Judge Haiganush R. Bedrosian.

[2] The named plaintiffs include Elizabeth Boyer, individually, and by and for her minor son, Jeremy Bowen; Rozanna Thomasian, individually, and by and for her minor daughter, Chenoa T.; Bethany L., individually, and by and for her minor son, Alin N.; Debbie B., individually, and by and for her minor granddaughter and ward, Margarita S.; Alice F., individually, and by and for her minor son, Marcell B.; Malcolm S., individually, and by and for her minor sons, Denton S. and Mitch S.; David Hall, individually, and by and for his minor son, Dylan Hall; Dara S., individually, and by and for her minor daughter, Amy H.; Sherry Arias, individually, and by and for her minor daughter, Hannah-Lea Arias; Susanne R., individually, and by and for her minor son, Sam R.; Art S., individually, and by and for his minor son, David S.; Nancy H., individually, and by and for her minor daughter, Tina H.; Stephanie W., individually, and by and for her minor daughter, Karen W.; and Tamara Morgan, individually, and by and for her minor son, Henry Morgan-Massimo.

Program is to ensure that children not only attend school, but also that they receive necessary rehabilitative and educational services to assist them in maintaining school attendance and achieving academic success.

However, in 2010, plaintiffs brought an action in the Superior Court against the chief judge and five magistrates of the Family Court who were sitting in the Truancy Court,[3] in their official capacities (collectively, the judicial defendants); two Family Court administrators,[4] in their official capacities (the administrator defendants); and five municipalities and the superintendents, in their official capacities, of the public school districts for the five municipalities.[5] The plaintiffs contended that their constitutional rights were being violated as a result of procedural errors occurring during the course of the administration of their cases in the Truancy Court, and they sought declaratory and injunctive relief, as well as relief under 42 U.S.C. § 1983.[6] The judicial defendants filed a motion to dismiss, pursuant to Rule 12(b)(1) of

---

[3] The five Truancy Court magistrates included Magistrates Patricia Asquith, Colleen Hastings (now a District Court judge), Edward Newman, Angela Paulhus, and Thomas Wright.

[4] The two administrators are Ronald Pagliarini, administrator of the Family Court, and Kevin Richard, director of juvenile services of the Family Court.

[5] The plaintiffs initially filed suit against six municipalities, alleging that those communities failed to define "truancy" in a manner that provided children and parents adequate notice of wrongful behavior. Between May and November 2010, all of the municipal defendants, except the city of Providence, agreed to cease their participation in the Truancy Court. However, plaintiffs amended the complaint a second time to add four more municipal defendants—East Providence, Burrillville, Smithfield, and South Kingstown—as well as the superintendents of each of the municipalities' public school systems.

[6] 42 U.S.C. § 1983, entitled "Civil action for deprivation of rights," states that

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's

the Superior Court Rules of Civil Procedure,[7] and a motion to strike under Rule 12(f),[8] and the administrator defendants filed a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6), but the trial justice denied the motions. The administrator defendants then petitioned this Court for a writ of certiorari, as the judicial defendants also did separately at a later date. On December 10, 2010, we granted the petitions for writ of certiorari. Now before this Court are a number of arguments raised by defendants, including that the Superior Court lacks subject-matter jurisdiction, plaintiffs lack standing, plaintiffs' claims are moot, and the case is barred by the doctrines of judicial immunity, comity, abstention, and res judicata. For the reasons set forth herein, we quash the Superior Court's order denying defendants' motions to dismiss.

---

judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

[7] Rule 12 of the Superior Court Rules of Civil Procedure, entitled "Defenses and objections—When and how presented—By pleading or motion—Motion for judgment on pleadings," states, in pertinent part,

"(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, * * * [or] (6) failure to state a claim upon which relief can be granted * * *."

[8] Rule 12(f), entitled "Motion to Strike," provides that

"Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter."

# I
## Facts and Travel

The factual background of this case is described at length in the thorough and accurate Superior Court decision denying defendants' motion to dismiss—viz., Boyer v. Jeremiah, No. 2010-1858, 2010 WL 4041812 (Super. Ct. Oct. 8, 2010).  We shall summarize only the facts that are relevant to the issues raised in this matter.

## A
## Truancy Court Program

In September 1999, the Truancy Court program was established by former Family Court Chief Judge Jeremiah.  The program was a specialized calendar designed to allow Family Court magistrates to conduct court sessions at schools with frequently truant children.[9]  The Truancy Court was intended to facilitate collaboration between the Family Court, schools, and service providers to ensure that children and their parents[10] received guidance and appropriate services within their own neighborhoods, quickly, efficiently, and effectively.

As set forth in the later-issued Family Court Administrative Order 2010-2, discussed infra, Part I, section C, "[t]he purpose of the Rhode Island Family Court Truancy calendar [was] to reduce truancy statewide," and "ensure that students not only attend[ed] school but also receive[d] the rehabilitative services and educational services that [would] help to assure school attendance and academic success."  To effectively carry out the purpose of the program, each child alleged to have been truant was given a choice between admitting to a truancy violation, thereby gaining acceptance into the Truancy Court program, or having a full trial in the Family

---

[9] A determination of truancy qualifies a child as "wayward."  G.L. 1956 § 14-1-3.  Other acts that might lead to a determination that a youth is wayward include deserting the household, refusing to obey parents, being habitually absent from school, or failing to follow school rules. Id.

[10] Hereafter, "parent(s) and/or guardian(s)" will be collectively referred to as "parent(s)" for ease of reference.

Court.  Even if a child, with his or her parents, opted for the Truancy Court program, the child and parent could elect to transfer a case to the Family Court by requesting a trial or hearing before the Family Court at any time.  Additionally, a child or parent could appeal a Truancy Court magistrate's order to the chief judge of the Family Court under a statutory right of appeal pursuant to G.L. 1956 § 8-10-3.1(d),[11] further amplified by Family Court Administrative Order 2008-1.[12]  The children and parents also were imbued with a statutory right to file a declaratory judgment in the Family Court under G.L. 1956 § 9-30-1.[13]  Finally, a child and parent could seek further review in this Court under G.L. 1956 § 8-1-2[14] or G.L. 1956 § 14-1-52(a).[15]

**B**
**Superior Court Decision**

On March 29, 2010, plaintiffs initiated an action in the Superior Court by filing a proposed class action complaint[16] and civil rights lawsuit under 42 U.S.C. § 1983.  The plaintiffs demanded declaratory relief under § 9-30-1, injunctive relief under Rule 65 of the Superior Court Rules of Civil Procedure, and attorneys' fees pursuant to 42 U.S.C. § 1988.  On the same day,

---

[11] General Laws 1956 § 8-10-3.1(d) provides that "[a] party aggrieved by an order entered by a magistrate shall be entitled to a review of the order by a justice of the [F]amily [C]ourt."

[12] Family Court Administrative Order 2008-1 governs the proceedings on appeal from the general magistrate and any magistrate of the Rhode Island Family Court.  Specifically, the order states that, under the authority of the chief judge of the Family Court as head of the court under § 8-10-14, "[a]n appeal permitted by law from the General Magistrate or Magistrate of the Rhode Island Family Court shall be heard by the Chief Judge of the Rhode Island Family Court."

[13] General Laws 1956 § 9-30-1 states, in pertinent part, that "[t]he * * * [F]amily [C]ourt * * * shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."

[14] General Laws 1956 § 8-1-2 provides, in pertinent part, that "[t]he [S]upreme [C]ourt shall have general supervision of all courts of inferior jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided * * *."

[15] General Laws 1956 § 14-1-52(a) states, in pertinent part, that "[f]rom any final decree, judgment, order, decision, or verdict of the [F]amily [C]ourt, * * * there shall be an appeal to the [S]upreme [C]ourt * * *."

[16] The plaintiffs filed the lawsuit as a proposed class action on behalf of "all public school students [in five municipalities] * * * who have been, or in the future, will be the subject of a truancy petition submitted to the Family Court * * *."  The class has not yet been certified.

plaintiffs filed separate motions: one for preliminary injunction and one for class certification pursuant to Rule 23 of the Superior Court Rules of Civil Procedure.[17] In addition to bringing suit against the various judicial and administrator defendants, plaintiffs sued several municipalities that had participated in the Truancy Court program. They alleged that all defendants had administered and operated the Truancy Court in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and article 1, section 2 of the Rhode Island Constitution, the Rhode Island General Laws, the Family Court Rules of Juvenile Proceedings, and the Supreme Court Rules of Judicial Conduct.

The allegations in the second amended complaint include that all defendants

> "[1] arraign[ed] and issue[d] orders against persons over whom the court has no [personal] jurisdiction * * *,
>
> "[2] fail[ed] to provide adequate information regarding individual rights at the arraignment, * * *
>
> "[3] permitt[ed] children members of the Plaintiff class to waive their right to counsel without first consulting with counsel, * * *
>
> "[4] engag[ed] in ex parte determinations regarding whether Plaintiff children ha[d] violated the terms and conditions of Truancy Court, * * * [and]
>
> "[5] fail[ed] to keep and provide to the Plaintiffs a verbatim record of all proceedings before the Truancy Court."

The plaintiffs also specifically alleged that former Chief Judge Jeremiah, Administrator Pagliarini, and Director Richard

> "[1] fail[ed] to ensure that interpreters [were] available as necessary to individuals appearing before the Truancy Court, * * * [and]

---

[17] The plaintiffs do not challenge their underlying adjudications or obligations to the Family Court.

"[2] fail[ed] to conduct a preliminary investigation to determine whether submitted petitions [were] legally sufficient on their face and whether further action [was] in the best interest of the public and the child * * *."

On May 24, 2010, the administrator defendants filed a motion to dismiss the complaint, alleging that the Superior Court lacked subject-matter jurisdiction over plaintiffs' claims and that plaintiffs had failed to state a claim upon which relief could be granted. See Rule 12(b)(1), (6). On May 25, 2010, the judicial defendants also moved to dismiss the complaint, pursuant to Rule 12(b)(1),[18] and moved to strike three of plaintiffs' claims for injunctive relief[19] and plaintiffs' request for attorneys' fees under Rule 12(f). The trial justice heard oral arguments on defendants' motions to dismiss and motion to strike, but before he rendered a decision, Chief Judge Bedrosian[20] promulgated administrative order 2010-2 on September 10, 2010.

## C
## Administrative Order 2010-2

Chief Judge Bedrosian's administrative order set out written procedures that dramatically reformed the Truancy Court Diversion Calendar Program. With regard to the intake guidelines for truancy petitions, administrative order 2010-2 mandated that "all truancy petitions shall be referred to the RI Family Court Intake Department for a preliminary investigation." If the Intake Department concluded that there was insufficient "evidence and/or documentation * * * to bring

---

[18] In the judicial defendants' memorandum supporting their petition for writ of certiorari, they clarified that they anticipated filing a motion to dismiss under Rule 12(b)(6) if the motion to dismiss under Rule 12(b)(1) was not successful.

[19] Specifically, the judicial defendants sought to strike two of plaintiffs' claims against the chief judge, which included allegations that the chief judge allowed the Intake Department to file truancy petitions prior to investigation and allowed Truancy Court proceedings that were not recorded, and one of the claims against the Family Court magistrates for allegedly issuing orders against individuals over whom they had no jurisdiction.

[20] Chief Judge Bedrosian was appointed to lead the Family Court after Chief Judge Jeremiah retired.

a student within the jurisdiction of the court, the Intake Department [would] not authorize the petition."

If, on the other hand, a conclusion was reached after preliminary investigation that there existed sufficient evidence and documentation to assert the court's jurisdiction, "the Intake Department [should] determine the most appropriate level of judicial action," which included referring the case to the truancy calendar or to the formal juvenile calendar.  Administrative order 2010-2 also added a threshold requirement that a student must "[have] at least 10 days of absences and/or [the petition] state[d] that a student [was] habitually late or absent from school" before the Intake Department could refer a case to the truancy calendar.

Under the terms of the order, if a petition was determined to be suitable for the truancy calendar, it was to be assigned to a school location, and written notice would be sent to the parents.  That notice would inform the parent that the child had been referred to the Family Court on a "wayward status offense of truancy," and that the parents would have the opportunity to give valid excuses for the absences at the hearing.  The notice would also set the location, time, and date of an initial meeting with a magistrate.  If the child or parent did not appear at the truancy calendar, order 2010-2 stated, "a summons may be issued for the child and parent/guardian to appear."  See § 14-1-16.[21]

_____

[21] Section 14-1-16, entitled "Summons of child or adult in charge of child," provides:
> "Upon the filing of a petition, the justice, if satisfied that there is reasonable cause for the petition, may issue a summons requiring the child to appear before the court at a time and place named in it, and shall also cause a summons to be issued to at least one of the parents of the child if either of them is known to reside within the state, or if there is no parent, then to the guardian or other lawful custodian of the child, if there is one known to be so resident, and, if not, then to the person with whom the child resides, if known."

The administrative order further required that, at the initial meeting, the magistrate was to discuss with the child and parents the two options that were available: the child could either participate in the Diversion Calendar Program or proceed to an arraignment on the formal juvenile calendar in Family Court. The order required the magistrate to read the truancy petition to the child and parent and to explain Rhode Island's compulsory school attendance laws, the requirements for participating in the Truancy Diversion Program, and the child's right to trial. The magistrate was also directed to inform the child that he or she could voluntarily leave the Truancy Diversion Program at any time or that he or she could be removed from the program, either for refusing to comply with its terms and conditions or if the child was charged with another offense. In the event that the child or parent did not appear at the initial meeting, the administrative order dictated that a summons could be issued.

If a child agreed to participate in the truancy program, order 2010-2 required that three documents be signed: (1) "Participant Guidelines," (2) "Participant's Forum Choice," and (3) "Release of Confidential Information." The order further elaborated that, at the initial meeting, the child and parent were to be advised of their right to hire an attorney at any time the child was enrolled in the Truancy Diversion Program. In those cases when the family was unable to afford the services of counsel, the matter could be placed on the formal juvenile calendar and, if appropriate, the child would be referred to the services of the public defender or court-appointed counsel. Order 2010-2 added that "Magistrates will assess the need for interpreters" and "[a]ll Truancy Diversion Program hearings will be recorded." Lastly, the order explained that after a

magistrate found the child had substantially complied with the program's requirements, he had the authority to dismiss the truancy petition.[22]

## D
## Superior Court Law Suit

On October 8, 2010, the trial justice denied defendants' motions to dismiss, without prejudice; he did, however, grant the judicial defendants' request for an evidentiary hearing on subject-matter jurisdiction, and he permitted the parties to engage in discovery prior to that hearing.

## E
## Writ of Certiorari

On October 25, 2010, in a preemptive strike before an evidentiary hearing was scheduled, the administrator defendants filed a petition for a writ of certiorari. The judicial defendants filed a separate petition for a writ of certiorari on November 26, 2010.[23] After a review of both petitions, we granted certiorari on December 10, 2010.[24] Before this Court, defendants make a number of arguments. Specifically, the judicial defendants argue that the Superior Court does not have subject-matter jurisdiction: they contend that the 42 U.S.C. § 1983 claim is, in essence, a veiled appeal of plaintiffs' petitions regarding waywardness and delinquency, over which the

---

[22] The administrative order also describes that a magistrate may review a truancy case for only one year, unless there is just cause to extend this time.

[23] On November 2, 2010, plaintiffs moved to amend the first amended complaint to add ten new plaintiffs and four new municipalities and the superintendents of their public schools as defendants; substitute then-acting Chief Judge Bedrosian for former Chief Judge Jeremiah; drop the defendant municipalities and superintendents with whom plaintiffs had settled; and clarify that plaintiffs sought a state-wide class certified against the acting chief judge of the Family Court, court administrators, and Truancy Court magistrates. The plaintiffs also filed an amended motion for class certification.

[24] The petition for writ of certiorari was filed in this Court before an order reflecting the trial justice's denial of the motion to dismiss was filed in the Superior Court. This case is ripe for decision, despite the fact that the Superior Court did not enter an order. See McKenna v. Williams, 874 A.2d 217, 224 n.6, 225 (R.I. 2005) (Superior Court order is not necessary to enable Supreme Court review).

Family Court has exclusive original jurisdiction. Alternatively, they contend that if the matter involves error by the Family Court, the case should be heard by the Supreme Court, which has exclusive supervisory authority over inferior courts. The judicial defendants also challenge plaintiffs' standing because some of plaintiffs' cases were dismissed or transferred to the regular Family Court calendar before the initial complaint was filed, and the remaining plaintiffs' cases have since been resolved. Therefore, they maintain, those plaintiffs do not face an imminent threat of injury nor do they seek real or articulable relief. Moreover, the judicial defendants argue that the case has become moot because the administrative order addresses each constitutional challenge raised in the complaint.[25] Further, the judicial defendants aver that, even if the Superior Court is cloaked with subject-matter jurisdiction, the doctrines of comity and abstention demand that the superior court dismiss the case, so that it more properly may be heard in the Family Court. Finally, the judicial defendants assert that plaintiffs' suit against the judicial officers is barred by sovereign immunity, qualified immunity, judicial immunity, legislative immunity, and is improper under the Eleventh Amendment to the United States Constitution.

The administrator defendants raise similar arguments; they insist that the substance of plaintiffs' allegations involve core issues of the Family Court, and that, therefore, the case should be before that tribunal. In the alternative, they contend that the Supreme Court should hear this case because it has exclusive jurisdiction to oversee the Family Court's actions and rulings. The administrator defendants also aver that they are uncertain whether any of plaintiffs' claims remain pending in the Truancy Court, and, therefore, according to them, standing is at issue. As

---

[25] The judicial defendants acknowledge that plaintiffs' challenge to the ex parte communications between the magistrates and school administrators was not specifically addressed in the administrative order; however, they argue that Truancy Court proceedings are not adversarial and, therefore, the magistrates may properly communicate with school administrators to gather information.

- 11 -

to comity, the administrator defendants assert that, out of respect, courts of coordinate jurisdictions hearing the same case should not overrule each other's decision. Finally, the administrator defendants argue that the plain language of 42 U.S.C. § 1983 bars injunctive relief against judicial officers. This prohibition, they contend, applies to them, as well.

In response, plaintiffs maintain that the case was brought properly before the Superior Court, because that court has subject-matter jurisdiction under the Uniform Declaratory Judgments Act, G.L. 1956 chapter 30 of title 9, and is vested with equitable jurisdiction. The plaintiffs also contend they have standing because the case should be addressed in the context of the proposed class action. The plaintiffs argue that defendants have waived any claim of mootness, because they did not raise it before the Superior Court. Also, plaintiffs assert that their complaint is not moot because the administrative order does not address all of the constitutional challenges that they raised in their complaint. Finally, plaintiffs entreat this Court to hold that comity does not apply because they do not seek to collaterally attack any order of the Truancy Court magistrates. Finally, plaintiffs submit that judicial immunity does not bar declaratory relief against the judicial officers.

## II
## Standard of Review

A motion under Rule 12(b)(1) questions a court's authority to adjudicate a particular controversy before it. This Court reviews such challenges de novo. Newman v. Valleywood Associates, Inc., 874 A.2d 1286, 1288 (R.I. 2005). "[I]n ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. A court may consider any evidence it deems necessary to settle the jurisdictional question." Morey v. State of Rhode Island, 359 F. Supp. 2d 71, 74 (D.R.I. 2005) (quoting Palazzolo v. Ruggiano, 993 F. Supp. 45, 46 (D.R.I. 1998)). A

challenge to subject-matter jurisdiction "may not be waived by any party and may be raised at any time in the proceedings." Pine v. Clark, 636 A.2d 1319, 1321 (R.I. 1994).

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint about whether it fails to state a claim upon which relief can be granted. In reviewing a justice's decision on a Rule 12(b)(6) motion to dismiss, we apply the same standards as the motion justice. Tucker Estates Charlestown, LLC v. Town of Charlestown, 964 A.2d 1138, 1140 (R.I. 2009). "The standard for granting a motion to dismiss is a difficult one for the movant to meet." Pellegrino v. Rhode Island Ethics Commission, 788 A.2d 1119, 1123 (R.I. 2002). "When this Court reviews a trial justice's granting of a Rule 12(b)(6) motion, we assume that the allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party." Pellegrino, 788 A.2d at 1123 (quoting Estate of Sherman v. Almeida, 747 A.2d 470, 473 (R.I. 2000)). If it "appears beyond a reasonable doubt that a plaintiff would not be entitled to relief under any conceivable set of facts," the motion may be granted. Id. (quoting Estate of Sherman, 747 A.2d at 473). This analysis requires a resolution of the overarching issue of justiciability: the court must have subject-matter jurisdiction over the issues raised in the complaint, plaintiffs must have standing, and the issues must not be moot.

### III
### Analysis

As a threshold matter, we will assume, without deciding, that the Superior Court has subject-matter jurisdiction.[26] We also will assume, again without deciding, that the judicial defendants and the administrator defendants are not immune from suit. Further, we assume, without deciding, that at least one of the plaintiffs had standing to bring this suit at the time the

---

[26] See generally Berberian v. O'Neil, 111 R.I. 354, 357-58, 302 A.2d 301, 303-04 (1973) (discussing the interplay between the Family Court and the Superior Court's subject-matter jurisdiction).

- 13 -

initial complaint was filed.[27]  See Mangual v. Rotger–Sabat, 317 F.3d 45, 58 (1st Cir. 2003) (standing is based on the facts as they existed at the time the complaint was filed); see also Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc., 528 U.S. 167, 170 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).").

Nonetheless, a plaintiff's stake in a case is not frozen at the moment the lawsuit is filed. It is well settled that he or she must maintain a personal interest in the outcome throughout the course of the litigation or the controversy becomes moot and, therefore, stripped of justiciability, despite the court's retention of subject-matter jurisdiction.  See Matos v. Clinton School District, 367 F.3d 68, 71 (1st Cir. 2004) (a cognizable case or controversy must exist not only at the outset of the lawsuit, but at all stages of the litigation, including appeal).  Accordingly, this Court will focus its analysis of this case on the issue of mootness.

---

[27] The plaintiffs allege the following individuals were still subject to the Truancy Court when the initial complaint was filed, and, therefore, may have standing: Debbie B., individually, and by and for her minor granddaughter and ward, Margarita S.; David Hall, individually, and by and for his minor son, Dylan Hall; Dara S., individually, and by and for her minor daughter, Amy H.; Nancy H., individually, and by and for her minor daughter, Tina H.; Susanne R., individually, and by and for her minor son, Sam R.; Art S., individually, and by and for his minor son, David S.; Stephanie W., individually, and by and for her minor daughter, Karen W.; and Tamara Morgan, individually, and by and for her minor son, Henry Morgan-Massimo.  The following plaintiffs did not have standing to bring suit, however, as they were either dismissed or transferred from the Truancy Court before the complaint was filed: Elizabeth Boyer, individually, and by and for her minor son, Jeremy Bowen; Rozanna Thomasian, individually, and by and for her minor daughter, Chenoa T.; Bethany L., individually, and by and for her minor son, Alin N.; Alice F., individually, and by and for her minor son, Marcell B.; Malcolm S., individually, and by and for her minor sons, Denton S. and Mitch S.; and Sherry Arias, individually, and by and for her minor daughter, Hannah-Lea Arias.  See American Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992) ("[P]ast exposure to harm will not, in and of itself, confer standing upon a litigant to obtain equitable relief '[a]bsent a sufficient likelihood that he will again be wronged in a similar way.'" quoting Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).

## A
## Mootness

The judicial defendants argue that plaintiffs' claims for declaratory and injunctive relief are moot because the practices in the Truancy Court about which they complained are no longer in effect since the administrative order was issued. On the other hand, plaintiffs contend that mootness was not raised at the time of the Superior Court hearing, and that, therefore, the issue has been waived. Alternatively, plaintiffs maintain that the administrative order does not address all of the constitutional challenges raised in the complaint and, as a result, the case is not moot.

Although the parties did not raise mootness before the Superior Court, this Court nonetheless considers it as a threshold issue of justiciability. See City of Cranston v. Rhode Island Laborers' District Council Local 1033, 960 A.2d 529, 533 (R.I. 2008) ("Although neither party directly has raised the issue, this Court first must address the threshold issue of justiciability before we may entertain the merits of the parties' substantive arguments."). We have held that the principle of mootness applies in actions for equitable relief, and that declaratory judgment will not be rendered on moot questions. See Town of Scituate v. Scituate Teachers' Association, 110 R.I. 679, 684, 296 A.2d 466, 469 (1972).

A case is moot if there is no continuing stake in the controversy, or if the court's judgment would fail to have any practical effect on the controversy. Lynch v. Rhode Island Department of Environmental Management, 994 A.2d 64, 71 (R.I. 2010); H.V. Collins Co. v. Williams, 990 A.2d 845, 848 (R.I. 2010). We "ha[ve] consistently held that a case is moot if the original complaint raised a justiciable controversy, but events occurring after the filing have deprived the litigant of a continuing stake in the controversy." State v. Medical Malpractice Joint Underwriting Association, 941 A.2d 219, 220 (R.I. 2008) (quoting Cicilline v. Almond, 809 A.2d 1101, 1105 (R.I. 2002)). For example, the passage of a new law or an amendment to

an existing law may moot a case. Midwest Media Property, L.L.C. v. Symmes Township, Ohio, 503 F.3d 456, 460 (6th Cir. 2007) (citing Hall v. Beals, 396 U.S. 45, 48 (1969)).

Here, plaintiffs' complaint alleges that defendants: (1) did not provide sufficient notice of conduct that would result in a child's referral to Truancy Court; (2) deprived children of a preliminary investigation prior to the filing of the truancy petition; (3) failed to serve summonses and copies of truancy petitions; (4) failed to properly arraign children; (5) improperly permitted children to waive their constitutional rights; (6) deprived children of a right to counsel; (7) issued orders without personal jurisdiction; (8) did not transcribe or record the Truancy Court proceedings; (9) deprived children of a meaningful opportunity to be heard by not appointing interpreters; and (10) deprived children of a meaningful opportunity to be heard by engaging in ex parte communications with school officials. The issue of mootness as it pertains to each of plaintiffs' ten alleged constitutional violations will be discussed in turn.[28]

**1**
**Notice**

The judicial defendants argue that the administrative order sets a minimum number of ten truancies, sufficient to give notice of the conduct that will result in a child's eligibility for the Diversion Program. The plaintiffs insist, however, that the administrative order, while indicating that the Truancy Court participants will receive notice, nevertheless is vague because it does not specify how or when they will receive that notice.

"Vagueness challenges under the [D]ue [P]rocess [C]lause rest principally on lack of notice." Moreau v. Flanders, 15 A.3d 565, 582 (R.I. 2011) (quoting State v. Russell, 890 A.2d

_____

[28] Nonetheless, "a determination of mootness may not end our judicial review." In re Court Order Dated October 22, 2003, 886 A.2d 342, 348 (R.I. 2005) (quoting Foster-Glocester Regional School Committee v. Board of Review, 854 A.2d 1008, 1013 (R.I. 2004)). This Court discusses, infra Part III, section B, whether an exception to mootness applies.

453, 460 (R.I. 2006)). "[I]t is well settled that a statute is unconstitutionally vague if it lacks explicit standards from its application and thus delegates power that enables enforcement officials to act arbitrarily with unchecked discretion." Id. (quoting Fitzpatrick v. Pare, 568 A.2d 1012, 1013 (R.I. 1990)). Further, "[a] statute is unconstitutionally vague if it compels 'a person of average intelligence to guess and to resort to conjecture as to its meaning and/or as to its supposed mandated application.'" Id. at 583 (quoting Kaveny v. Town of Cumberland Zoning Board of Review, 875 A.2d 1, 10 (R.I. 2005)). Further, the fundamental requisite of due process is the opportunity to be heard at a meaningful time and in a meaningful manner; this certainly requires one to be forewarned about the subject matter of the hearing with sufficient detail so an intelligent explanation or rebuttal can be formulated. See Avanzo v. Rhode Island Department of Human Services, 625 A.2d 208, 210-11 (R.I. 1993) (citing Goldberg v. Kelly, 397 U.S. 254, 268-69 (1970)).

It is true that previously there was no guidance under the Truancy Court procedures or under G.L. 1956 §§ 16-19-1[29] and 16-19-6[30] as to the number of absences from school that were necessary to incur possible liability as a truant. However, the administrative order specifies a threshold number of ten days of absence before a child may be referred either to the Diversion Program or to the formal juvenile calendar. Indeed, administrative order 2010-2 states that "[t]he Intake Department may refer cases to the Truancy calendar if the petition: * * * [h]as at least 10 days of absences and/or states that a student is habitually late or absent from school." We are

---

[29] General Laws 1956 § 16-19-1, entitled "Attendance required," provides that "[e]very child who has completed or will have completed six (6) years of life on or before September 1 of any school year and has not completed eighteen (18) years of life shall regularly attend some public day school during all the days and hours that the public schools are in session in the city or town in which the child resides."

[30] Section 16-19-6, entitled "Proceedings against habitual truants and offenders," provides that a "habitual truant" is "every child who is required under § 16-19-1 to attend school and who willfully and habitually absents himself or herself from attending school."

confident that a person of average intelligence need neither guess nor speculate about the number of absences that will result in a referral to the Truancy Diversion Program. See Moreau, 15 A.3d at 583 (holding that a statute is not unconstitutionally vague if it gives a person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly).

Administrative order 2010-2 also details how notice will be delivered to the child and his or her parents. It states that if the Intake Department determines a petition is suitable for the Truancy calendar, the petition "will be assigned to the appropriate school location" and "written notice shall be sent to the parent/guardian." The written notice informs the parents that the child "has been referred to the Family Court on a wayward status offense of truancy" and that the child "has been prescreened to enter the Truancy Diversion Program." The notice explains that the parents will "ha[ve] the opportunity to provide valid excuses for absences, if any, at the hearing." Finally, the notice briefly describes the Diversion Program and sets the location, time, and date of the initial meeting with a magistrate. See Avanzo, 625 A.2d at 210-11 (explaining that due process requires an opportunity to be heard at a meaningful time and in a meaningful manner). Accordingly, after reviewing the administrative order, we hold that its specific and clarified procedure affords children and parents sufficient notice of what conduct will subject them to a truancy proceeding and the manner in which the child and parents will receive notice of a truancy petition. In our opinion, plaintiffs' constitutional challenge to the sufficiency of the notice requirement has been mooted by the administrative order.

**2**
**Preliminary Investigation**

The judicial defendants further argue that the administrative order blunts plaintiffs' complaint because it sets out a detailed procedure for a preliminary investigation. The plaintiffs

contend that there is no record that the Intake Department investigates the truancy petitions that it receives from school officials.

It is worth mentioning that we have recognized previously that an intake investigation is not required as a step in an accusatory proceeding of delinquency or waywardness: the investigation by the Intake Department "serves primarily to shield the child from arbitrary bureaucratic action and to forestall the Family Court from assuming jurisdiction when such would ill serve the interests of the juvenile and the public." In re Leon, 122 R.I. 548, 552, 410 A.2d 121, 124 (1980) (citing In re Three Minor Children, 110 R.I. 11, 15, 289 A.2d 434, 436 (1972)); see § 14-1-10.[31]

After a review of the revision to the preliminary investigation procedure, we conclude that the administrative order safeguards children from arbitrary bureaucratic action and that the Family Court, through its administrative order, has adhered to the statutory requirements. Indeed, order 2010-2 provides that "all truancy petitions shall be referred to the RI Family Court Intake Department for a preliminary investigation." The administrative order also clarifies how the Intake Department shall determine if sufficient evidence and documentation exists to bring a child within the jurisdiction of the court. Administrative order 2010-2 specifically cites to § 8-10-22, entitled "Intake department—Duties," which states that the duties of the Intake Department

---

[31] Section 14-1-10, entitled "Preliminary investigation on information furnished to the court," states, in pertinent part, that the preliminary investigation

> "may include a preliminary investigation of the home and environmental situation of the child, his or her previous history, and the circumstances which were the subject of the information. To avoid duplication of effort and to take full advantage of all existing facilities, the report of any public agency, or of any private social agency licensed by the department of children, youth, and families, may be accepted by the court as sufficient evidence for the filing of a petition."

"shall be to receive applications and complaints relative to juvenile matters presented to the court, to provide for a thorough investigation of the applications and complaints, * * * to report thereon to the court before formal petition is filed[,] * * * [and to] perform such other duties as shall be assigned to it by the court."

The administrative order also cites to Rule 3 of the Family Court Rules of Juvenile Proceedings, entitled "Intake procedure," which requires that after a petition is submitted to the court, it is

"referred to the intake department for preliminary investigation to determine whether the facts are legally sufficient to bring the child within the jurisdiction of the court and, if so, to determine whether the interests of the public or of the child require that further action be taken."

Rule 3 explains that preliminary investigation can include

"investigation of the home and environmental situation of the child, the child's previous history and the circumstances which were the subject of the petition. The report of any public agency, or of any private social agency licensed by the department for children and their families, may be accepted by the court for its consideration."

The administrative order then expounds that upon a determination that there is sufficient evidence to assert the court's jurisdiction, the Intake Department "shall determine the most appropriate level of judicial action," which could be an "[a]ssignment of truancy petition[] to an Intake worker for further investigation and monitoring," an "[a]ssignment of [the] case[] to the Truancy calendar," or an "[a]ssignment of [the] case[] to the formal juvenile calendar." Based on our review of the administrative order, we are completely comfortable that a sufficient preliminary investigation procedure is now in place.

## 3
## Summons

The judicial defendants aver that the administrative order informs that the Truancy Court program is voluntary in nature, and, therefore, a summons is not necessary. If the child and/or

- 20 -

parent do not choose to participate on a voluntary basis, the truancy petition is referred to the formal juvenile calendar, where procedural protections, including the service of a summons, are enforced. The plaintiffs respond that formal summonses are required under Rule 6 of the Family Court Rules of Juvenile Proceedings and §§ 14-1-16 and 14-1-17, and that no requisite summonses were used.

The administrative order directs that a child and parent may "choose" to participate in the Truancy Program. In Rhode Island, it is well established that a summons is not required when a defendant makes a voluntary appearance, and thus waives the right to personal service. See Theta Properties v. Ronci Realty Co., 814 A.2d 907, 912-13 (R.I. 2003). Administrative order 2010-2 elaborates that if the child or parent does not appear at the Truancy calendar, "a summons may be issued for the child and parent/guardian to appear." If the child and parent appear at the Truancy calendar, but "the student and parent/guardian do not each agree to participate in the Truancy Diversionary Program, the case will be referred to the formal juvenile calendar." It is important that when a case is referred to the juvenile calendar, a summons is then served based on §§ 14-1-16, 14-1-17, and Rule 6(e).[32] Accordingly, it is our opinion that the administrative order, by essentially permitting the child and parents to choose either to participate voluntarily and waive service or to avail themselves of the juvenile calendar and its service requirements moot plaintiffs' allegation that the Truancy Court does not properly serve notice upon the child and parents.

---

[32] Rule 6 of the Family Court Rules of Juvenile Proceedings, entitled "Summons," provides, in pertinent part:

> "(e) Form for Truancy Court: Upon the filing of a truancy petition the court shall issue a summons requiring the child and a parent, or guardian, or lawful custodian, or a person with whom the child resides to appear at a time and place as written therein for a hearing on the petition."

# 4
## Arraignment

The judicial defendants maintain that the administrative order also negates plaintiffs' constitutional challenges that the magistrates did not arraign children properly. The plaintiffs insist that their due process rights have been violated because defendants failed to provide adequate information regarding individual rights at the arraignment, as is required by Rule 9 of the Family Court Rules of Juvenile Proceedings.

However, the administrative order elucidates that the term "arraignment," although perhaps inelegantly employed, nonetheless refers to the initial meeting between the parent, child, and magistrate. That occurrence focuses on, and is limited to, describing the program, explaining the conditions for participating in the program, and giving the parent and child the option of entering the program. Specifically, administrative order 2010-2 states that, at the "arraignment,"

> "the Magistrate will read the truancy petition and will explain the Rhode Island compulsory school attendance laws as well as the requirements of the Truancy Diversion Program consistent with the document entitled Participant Guidelines. The Magistrate also will explain the child's right to trial as well as the option for the Truancy Diversion program consistent with the form entitled Participant's Forum Choice. The Magistrate will explain the Release of Confidential Information to the child and parent/guardian."

In particular, the "Participant Guidelines" provide that "[p]arents/guardians may hire an attorney for their child at this proceeding," and "[i]f a parent/guardian cannot afford an attorney, the Court may appoint the public defender or court[-]appointed counsel." The "Participant Guidelines" also specify that the Truancy Court may mete out the following sanctions: "[s]chool detention"; "[h]ome curfew"; "[h]ome confinement"; "[c]ounseling"; "[e]ducational, psychiatric or psychological testing"; "[c]ommunity service"; "[r]eferral for drug testing and/or treatment or

referral to the Drug Court calendar"; "DCYF Intervention, services and/or placement if necessary"; and "[a]ssignment of the truancy petition to the formal calendar." Further, the "Participant's Forum Choice" lists the rights of the child, including the "right to a trial by a [j]udge"; the "right to appeal to the Rhode Island Supreme Court from any decision or finding of waywardness"; the "right to have the petitioner prove each and every element of the offense(s) against [him or her] by evidence and by proof beyond a reasonable doubt"; the "right to the presumption of innocence"; the "privilege against self-incrimination"; the "right to confront and cross-examine the witnesses against [him or her]"; the "right to present evidence and witnesses on [his or her] behalf and to testify on [his or her] own defense if [he or she] choose[s] to do so"; and the "right to appeal to the Rhode Island Supreme Court from any sentence imposed."

This procedure mirrors the arraignment procedure specified in Rule 9 of the Rules of Juvenile Proceedings, which also requires that the court explain the right to counsel and appoint counsel when necessary, as well as

> "(1) the nature of the charges against the child, (2) the maximum sentence that could be imposed, (3) the benefit of the presumption of innocence, (4) the right to remain silent, (5) the right to confront and cross-examine his or her accusers and the witnesses against him [or her], (6) the right to testify and to call witnesses in the child's own defense, (7) the right to have the state prove the child's guilt beyond a reasonable doubt, (8) the right to appeal any delinquency finding to the Rhode Island Supreme Court, and (9) the consequence of trial as an adult for all crimes if a child has been twice adjudicated as delinquent by reason of felonies." Id.

Accordingly, we have no doubt that the administrative order sets out a procedure through which adequate information about individual rights, as mandated by Rule 9, is presented at the arraignment to the child and parents.

## 5
## Waiver of Constitutional Rights

Before the administrative order was issued, each child was required to sign a "Waiver of Rights Form," which waived "[his or her] right to a trial by a [j]udge and [his and her] right to appeal to the Supreme Court from any decision or finding of delinquency or waywardness" and "[his or her] right to appeal to the Rhode Island Supreme Court from any sentence imposed by the Court after the entry of [his or her] ADMISSION OF SUFFICIENT FACTS or ADMISSION." This has been changed by the administrative order; a child now need only sign the "Participant Guidelines" form, which explains the expectations and requirements of both the child and parents who participate in the Truancy Court and includes a provision that the parents may hire their own attorney to represent their child and that the child or parent may request a trial with the formal juvenile calendar; the "Participant's Forum Choice" form, which delineates the child's various rights depending on whether he or she goes to trial or attends the Truancy Diversion Program; and the "Release of Confidential Information" form, which allows the court to access any information about any educational or medical issues of the child. If a child or parent is unwilling to voluntarily consent, the child is to be referred to the formal juvenile calendar and is afforded the substantive protection of the Rules of Juvenile Proceedings. See § 14-1-16; Rule 6(e). There is no reference to the "Waiver of Rights Form" in administrative order 2010-2, and no child is required to sign such a form.

## 6
## Right to Counsel

The judicial defendants submit that the administrative order moots plaintiffs' constitutional challenge with respect to the right to counsel because the order directs that the child and parent will be advised of the right to hire an attorney and it further illuminates about

how the child or parent might obtain the assistance of counsel. The plaintiffs assert that this is not enough; they contend that their due process rights have been violated because defendants permit children to waive their right to counsel without first consulting with counsel. They also maintain that children are insufficiently protected because the order indicates only that the child "may" be referred to the public defender or court-appointed counsel.

In Rhode Island, § 14-1-31, entitled "Services of public defender," explicitly states that

> "[p]rior to the commencement of any hearing, the justice shall advise the parent or guardian of any child, or the adult involved, as the case may be, that if he or she is financially unable to engage counsel, he or she is entitled to the services of the public defender."

Further, it is recognized that a right guaranteed by a statute may be waived, regardless of the plain and unambiguous terms by which such right is expressed. Gallucci v. Brindamour, 477 A.2d 617, 618 (R.I. 1984). Waiver in a criminal context must be voluntary, knowing, and intelligent, which a court determines by considering the totality of circumstances and facts surrounding a particular case. Wilkicki v. Brady, 882 F. Supp. 1227, 1231-32 (D.R.I. 1995). Although a juvenile hearing need not provide all the safeguards of a criminal trial, it "must measure up to the essentials of due process and fair treatment." In re Gault, 387 U.S. 1, 30-31 (1967) (quoting Kent v. United States, 383 U.S. 541, 562 (1966)); see also In re Fiske, 117 R.I. 454, 457, 367 A.2d 1069, 1072 (1977).

Administrative order 2010-2 states:

> "The parent/guardian and student will be advised that they have the right to hire an attorney for the child at any time during the Truancy Diversion Program or, if they cannot afford an attorney, the case will be scheduled on the formal juvenile calendar in the county where the student resides. If a parent/guardian is financially unable to engage counsel, the student may be referred to the services of the public defender or court[-]appointed counsel."

We are satisfied that the administrative order meets the notice of the right to counsel requirement in juvenile proceedings. We are further satisfied that the administrative order properly addresses plaintiffs' concern about the method used to inform the child and parents of the right to counsel, while delineating a procedure that facilitates a voluntary, knowing, and intelligent waiver.

## 7
## Personal Jurisdiction

The judicial defendants argue that plaintiffs' constitutional challenge for lack of personal jurisdiction is rendered moot because the administrative order is pointed and specific that participation in the Truancy Diversion Calendar is voluntary. They declare that the administrative order sufficiently explains that if the child or his or her parents contest jurisdiction, the matter will be referred to the formal juvenile calendar, which will issue a summons to the child and parent. The plaintiffs assert that the magistrates are required to ensure that a proper summons is issued before any order is entered against a child or parent, but that the magistrates have failed to comply with that obligation.

As discussed above, § 14-1-11[33] states that the filing of a truancy petition constitutes assumption of jurisdiction over the child, and § 14-1-16 dictates that a summons should be issued to the child and at least one parent. Administrative order 2010-2 is clear that participation in the program is voluntary; indeed, the order states that the magistrate must "explain the child's right

---

[33] Section 14-1-11(a), entitled "Authoring and filing petition" states,
> "The filing of the petition constitutes assumption of jurisdiction over the child. Filing shall take place upon authorization by the intake department upon completion of its procedures pursuant to Rule 3 of the Rules of Juvenile Proceedings, upon authorization by a justice of the [F]amily [C]ourt pursuant to Rule 4 of the Rules of Juvenile Proceedings, or immediately upon appearance of the child before the court following emergency detention, unless the court otherwise orders."

to trial as well as the option for the Truancy Diversion Program." See Theta Properties, 814 A.2d at 912-13; Lundgren v. Pawtucket Firefighters Association Local No. 1261, 595 A.2d 808, 816 (R.I. 1991) (party who defends a claim without objecting to court's lack of personal jurisdiction waives that jurisdictional defense). It is apparent that since the issuance of the administrative order, a parent and child are free to choose to decline to participate in the Diversion Program. If they do, or if they contest jurisdiction, then the court will issue a summons to the child in accordance with § 14-1-16 and Rule 6, and to the parent pursuant to § 14-1-16 and Rule 6(d)-(e). Indeed, administrative order 2010-2 specifically explains that "[i]f the student or parent does not appear at the Truancy calendar, a summons may be issued for the child and parent/guardian to appear." It is, accordingly, our opinion that any shortcomings about the establishment of personal jurisdiction arising from the operation of the Truancy Court have been remedied by the administrative order.

## 8
## Record of the Proceedings

Administrative order 2010-2 directs that "[a]ll Truancy Diversion Program hearings will be recorded." As a result, the judicial defendants argue that plaintiffs' complaints about the lack of a record have become moot. By contrast, plaintiffs insist that the administrative order does not moot the claim because the order does not state how the hearings will be recorded or whether the records will be verbatim. The plaintiffs argue that § 8-10-3(b)[34] supports their contention that failing to provide a stenographic or other verbatim record of all proceedings before the Truancy Court is a violation of plaintiffs' rights. However, the judicial defendants assert that stenographic recordings of the Truancy Court proceedings are not required, because appeals

---

[34] Section 8-10-3(b) provides that "[t]he [F]amily [C]ourt shall be a court of record and shall have a seal which shall contain such words and devices as the court shall adopt."

- 27 -

from the Truancy Court go to the chief judge for a full hearing de novo, as was set forth in Family Court administrative order 2008-1, which describes the procedure to appeal a finding of a Family Court magistrate.

It is now crystal clear that "[a]ll Truancy Diversion Program hearings will be recorded." It is true that § 8-10-37, entitled "Report of trials—Transcripts," states "[s]ubject to the provisions of § 8-10-21, court reporters shall report stenographically * * * the proceedings in the trial of every action or proceeding, civil or criminal, in the [F]amily [C]ourt." It is also true, as plaintiffs' allege, that no stenographic transcriptions or audio recordings took place in the truancy proceedings at the time the complaint was filed. However, the promulgation of the administrative order has cured that affliction because the administrative order specifically requires the hearings to be recorded. In our judgment, the fact that Truancy Court proceedings are audio recorded, and not stenographically recorded, is sufficient.

**9**
**Interpreters**

The judicial defendants contend that plaintiffs' constitutional challenge to the appointment of interpreters has been rendered moot because the administrative order explains that the magistrates have discretion to determine when an interpreter should be made available for a child who is before the court and who may not be sufficiently fluent in English. The plaintiffs disagree; they say that the administrative order does not moot the claim, positing that interpreters should be provided to all individuals appearing before the Truancy Court, because the magistrates may not know whether a participant is in need of an interpreter without an interpreter.

Administrative order 2010-2 states that "Magistrates will assess the need for interpreters taking into account the participant's desire for such services and ensure that interpreters be

provided for each Court session if necessary. This may include referring a case to the formal juvenile calendar." The plaintiffs contend that it is inappropriate for the magistrates to have discretion to assess the needs for an interpreter. An interpreter, they say, should be present and available to all who come before the court. This Court has held "that a trial justice is entrusted with the discretion to appoint an interpreter if he or she determines that a defendant is unable to understand the English language adequately * * *." State v. Ibrahim, 862 A.2d 787, 798 (R.I. 2004). We have long held that a trial justice is granted a wide degree of discretion in the "selection, appointment, and retention of an interpreter." State v. Lopez-Navor, 951 A.2d 508, 513 (R.I. 2008) (quoting State v. Deslovers, 40 R.I. 89, 115, 100 A. 64, 73 (1917)). Accordingly, it is our opinion that the administrative order passes constitutional muster with respect to the accessibility and use of interpreters.

**10**
**Ex Parte Communication**

Even though the issue of ex parte communication was not directly addressed in the administrative order, defendants argue that doing so was not necessary because the Diversion Program was designed to provide a non-adversarial means for the resolution of truancy petitions. We agree that the administrative order does not directly address plaintiffs' concerns with ex parte communication. However, we fully expect that the judicial officers of the Family Court will be faithful to the law on ex parte communication, as set forth in Arnold v. Lebel, 941 A.2d 813, 819-21 (R.I. 2007).[35] We are confident that the Family Court will abide by this binding and well established law, and to the Code of Judicial Conduct, relating to ex parte communication.

_____

[35] In Arnold v. Lebel, 941 A.2d 813, 819-21 (R.I. 2007), we held that, under the Administrative Procedures Act, Department of Human Services (DHS) hearing officers were prohibited from engaging in ex parte communications concerning adjudicatory facts with DHS staff members and outside resources about medical assistance applicants' pending cases without giving applicants

**11**
**Conclusion on Mootness of Plaintiffs' Claims**

After a review of the ten constitutional challenges raised in plaintiffs' complaint, we are satisfied that they have been obviated by the administrative order and by existing law. Further, plaintiffs do not argue that the administrative order has not been properly adopted or implemented by the Family Court. Thus, plaintiffs' request that the Superior Court declare the previous procedures in the Truancy Court to be unconstitutional and enjoin the Family Court from enforcing the prior procedures has become moot.

**B**
**Mootness Exceptions**

As an additional arrow in their quiver on the issue of mootness, plaintiffs maintain that the "extreme public importance capable of repetition yet evading review" exception to mootness applies here, because there can be no assurance that the Family Court will not revert to the earlier version of the administrative order when this litigation has come to an end. The defendants respond by arguing that the claims are not capable of repetition because the administrative order is binding. The defendants further argue that the claims will not evade review because, if the Truancy Court personnel do not comply with the administrative order, a litigant may pursue an appeal under §§ 14-1-52 or 8-1-2 to the Supreme Court or under § 8-10-3.1(d) and (e) or the Rhode Island Family Court Administrative Order 2008-1 to a judge of the Family Court and then to the Supreme Court.

We have held that "[t]his Court will review an otherwise moot case only when the issues are 'of extreme public importance, which are capable of repetition but which evade review.'"

an opportunity to challenge the information gleaned through such communications. We also recognized that ex parte communication is authorized for general or purely administrative matters pertaining to the discharge of a duty, such as procedural or timing matters. Id. at 821.

- 30 -

Campbell v. Tiverton Zoning Board, 15 A.3d 1015, 1022 (R.I. 2011) (quoting H.V. Collins Co., 990 A.2d at 848). "Issues of extreme public importance usually 'implicate important constitutional rights, matters concerning a person's livelihood, or matters concerning citizen voting rights.'" Id. (quoting H.V. Collins Co., 990 A.2d at 848). A case is "capable of repetition yet evading review" if there is a "reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149 (1975). The "same action" generally refers to particular agency policies, regulations, guidelines, or recurrent or identical agency actions. Public Utilities Commission of California v. F.E.R.C., 236 F.3d 708, 715 (D.C. Cir. 2001). We have cautioned, however, that this exception for issues of extreme public importance capable of repetition but evading review is "a narrow exception to the mootness doctrine." Campbell, 15 A.3d at 1022 (quoting In re Westerly Hospital, 963 A.2d 636, 638 (R.I. 2009) (mem.)).

Here, to the extent that the issues in this case were once of extreme public importance, the chief judge of the Family Court has addressed them by establishing the proper procedures for the Truancy Court via the administrative order. See Cicilline, 809 A.2d at 1106.

As to the issue of whether the matter is capable of repetition, it is well recognized that "[a] defendant's voluntary cessation of allegedly unlawful conduct ordinarily does not suffice to moot a case." Friends of the Earth, Inc., 528 U.S. at 174. Indeed, there may be an exception if there is a "substantial likelihood that the challenged statutory language will be reenacted," or where the statute is replaced by a statute with narrower but still similar language. Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1329-30 (11th Cir. 2004). This likelihood exists when, for example, a defendant has signaled an intention to reenact the challenged

- 31 -

statutory language, or where it has already been replaced by "another constitutionally suspect law." Id. at 1330.

However, defendants have not signaled any intention to, or made any threat to, reenact a suspect administrative order; therefore, injunctive and declaratory relief are mooted. See Bench Billboard Co. v. City of Cincinnati, 675 F.3d 974, 981 (6th Cir. 2012) (citing City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 (1982), Kentucky Right to Life, Inc. v. Terry, 108 F.3d 637, 644 (6th Cir. 1997), and Brandywine, Inc. v. City of Richmond, Kentucky, 359 F.3d 830, 836 (6th Cir. 2004)). Further, "'cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties,' and * * * 'such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine.'" Bench Billboard Co., 675 F.3d at 981 (quoting Mosley v. Hairston, 920 F.2d 409, 415 (6th Cir. 1990)). Thus, "[a] declaratory judgment on the validity of a repealed ordinance is a textbook example of 'advising what the law would be upon a hypothetical state of facts.'" National Advertising Co. v. City and County of Denver, 912 F.2d 405, 412 (10th Cir. 1990) (quoting Blinder, Robinson & Co. v. United States Securities and Exchange Commission, 748 F.2d 1415, 1418 (10th Cir. 1984)).

In the dispute before us, there is no argument offered that there is any indication whatsoever that the Family Court has any intention of reinstating the previous practices about which plaintiffs' complained. See, e.g., Covenant Christian Ministries, Inc. v. City of Marietta, Georgia, 654 F.3d 1231, 1239 (11th Cir. 2011) ("When a party challenges an ordinance and seeks injunctive relief, a superseding ordinance moots the claim for injunctive relief."); National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005) ("[T]he Supreme Court ha[s] repeatedly held that the repeal or amendment of an allegedly unconstitutional statute moots

legal challenges to the legitimacy of the repealed legislation."). The general assumption that an agency will be faithful to its own regulations, therefore, stands. See Friends of the Earth, Inc. v. Environmental Protection Agency, 446 F.3d 140, 148 (D.C. Cir. 2006).

Further, it is significant that this case does not involve a short-term administrative order, the subject of which might be an issue that is "capable of repetition, yet evading review." Carroll v. President and Commissioners of Princess Anne, 393 U.S. 175, 179 (1968) (quoting Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515 (1910)). The plaintiffs offer no reason to expect that the Family Court will repeat the alleged constitutional violations that were superseded by the administrative order. It is speculative, at best, whether any unconstitutional procedures may recur in the future. See Cicilline, 809 A.2d at 1106. This Court also must presume that the Family Court forthrightly will abide by its administrative order and properly consider the full impact of any future administrative orders.

Finally, even if the matter is capable of repetition, it would not evade review; there are many avenues for a plaintiff to appeal. Determinations by Truancy Court magistrates are reviewable by statute, and thus hardly evade review. See § 8-10-3.1(d), (e) ("A party aggrieved by an order entered by a magistrate shall be entitled to a review of the order by a justice of the [F]amily [C]ourt. * * * Final orders of the [F]amily [C]ourt entered in a proceeding to review an order of a magistrate may be appealed to the [S]upreme [C]ourt."); see also Family Court Administrative Order 2008-1 (clarifying the right to appeal Truancy Court determinations to a justice of the Family Court). Further review is also available in the Supreme Court, under § 14-1-52(a), which states that "[f]rom any final decree, judgment, order, decision, or verdict of the [F]amily [C]ourt * * * there shall be an appeal to the [S]upreme [C]ourt," and § 8-1-2, which provides that "[t]he [S]upreme [C]ourt shall have general supervision of all courts of inferior

- 33 -

jurisdiction to correct and prevent errors and abuses therein when no other remedy is expressly provided * * *." Accordingly, plaintiffs have not met the difficult burden of showing that the circumstances which gave rise to the controversy in this case, although moot, are of extreme public importance capable of repetition yet evading review, rendering this case unreviewable. Thus, there is no exception to the mootness doctrine that would justify our deciding this case on its merits.

We hold that there are no ongoing truancy petitions that continue to be affected by the earlier Truancy Court procedures; this Court finds no ongoing controversy in which the plaintiffs have an articulable stake. See H.V. Collins, 990 A.2d at 848 (requiring articulable stake in outcome). Granting the plaintiffs' requested relief would not have any significant effect. See Lynch, 994 A.2d at 71 (explaining that a question is moot if judgment would have no practical effect on the controversy). Accordingly, we hold that the plaintiffs' claims have become moot, and because we so hold, we need not, and do not, reach the other issues raised in this case.[36]

---

[36] We pause to acknowledge, however, that, although we decide this case on grounds of mootness, it is our belief based on the existing record that the Family Court would have been the more appropriate forum to review the challenges raised in plaintiffs' complaint. Comity permits, but does not require, a court to stay a pending proceeding if a case involving the same parties and subject matter is pending in another court with overlapping jurisdiction. See Halliwell v. Lippitt Realty Co., 120 R.I. 927, 927, 394 A.2d 708, 709 (1978). Comity is a flexible doctrine that rests on several principles, including "foster[ing] cooperation, promot[ing] harmony, and build[ing] goodwill" among co-equal courts. 16 Am. Jur. 2d Conflict of Law § 11 at 25 (2009). It serves as "a necessary expedient to preserve the delicate balance of power and harmonious relations among the various courts." Id.; see United States v. Nippon Paper Industries Co., 109 F.3d 1, 8 (1st Cir. 1997) ("Comity is more an aspiration than a fixed rule, more a matter of grace than a matter of obligation."). We further acknowledge that the trial justice may well have come to the same conclusions in this case as did this Court. However, the case was reviewed by this Court at an early stage pursuant to our issuance of a writ of certiorari.

Here, the Superior Court was asked to make a ruling that could have found prior proceedings in the Family Court to have been invalid. In our opinion, and although we do not decide the matter on that basis, this cuts against the grain of the effective administration of justice and the principle of respect among the various courts of concomitant jurisdiction.

- 34 -

## Conclusion

For the reasons set forth in this opinion, we quash the order of the Superior Court and remand the record to that tribunal, with our decision endorsed thereon and with directions to enter a final judgment dismissing the plaintiffs' civil action as moot.

Justice Goldberg did not participate.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**   Elizabeth Boyer et al. v. Chief Judge Haiganush Bedrosian et al.

**CASE NO:**   No. 2010-369-M.P.
No. 2010-414-M.P.
(PC 10-1858)

**COURT:**   Supreme Court

**DATE OPINION FILED:**   December 12, 2012

**JUSTICES:**   Suttell, C.J., Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**   Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:**   Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice William E. Carnes, Jr.

**ATTORNEYS ON APPEAL:**

For Plaintiffs:   Thomas W. Lyons, Esq.

For Defendants:
Michael B. Forte,  Esq.

James R. Lee, Department of Attorney General